IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOHNNY W. LIGGINS, <br> Institutional I.D. No. 1425548, <br> SID No. 5272247 <br>       Plaintiff, <br><br> v. <br><br> RICHARD LEAL, Assistant Warden, <br> *et al.*, <br><br>       Defendants. | § § § § § § § § § § § § | <br><br><br><br><br> Civil Action No. 1:14-CV-068-BL <br><br><br><br> Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Johnny Liggins, proceeding *pro se* and *in forma pauperis*, filed his complaint on April 21, 2014, pursuant to 42 U.S.C. § 1983. (Doc. 1). On November 13, 2014, Plaintiff testified at an evidentiary hearing before this court, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). (*See* Docs. 7, 8). At the *Spears* hearing, Plaintiff declined to consent to proceed before a United States Magistrate Judge.

In an *in forma pauperis* prisoner civil rights action against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915–1915A to dismiss the complaint or any portion of the complaint which is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). A complaint is frivolous when it is based on an indisputably meritless legal theory. *Id.*

### I. BACKGROUND

At his *Spears* hearing, Plaintiff testified that "nighttime raids" or "shakedowns" of the dayroom would take place when prison officials had cause to believe the dayroom contained contraband. During shakedowns, prisoners are subject to strip searches. In his complaint, Plaintiff alleges that on September 3, 2012, approximately eight corrections officers (C.O. or

officer) at the Robertson Unit initiated a shakedown of the dayroom. Meanwhile, all inmates were escorted outside to the passive recreation yard where they were strip searched one at a time. Plaintiff alleges that all defendants were in some way involved in the shakedown, and that all defendants except John Does 1–3 (two female officers and one male officer) were in some way involved in the strip search.[1]

## II. DISCUSSION

Courts must construe *pro se* prisoners' complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At his *Spears* hearing, though not in his complaint, Plaintiff indicated he felt the strip search violated his right to be free from unreasonable searches and seizures under the Fourth Amendment.

Liberally construed, Plaintiff's complaint contests both the justification behind the dayroom shakedown and the conduct during the search. The conduct Plaintiff complains of includes: female officers being present during the strip search; confiscation of property from the dayroom; and contaminated gloves worn by dayroom officers.

## A. JUSTIFICATION

"Strip searches have been repeatedly recognized as an important tool of prison security, and are not *per se* unreasonable." *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013). "A State's operation of a prison presents special needs beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Poulin v. Correll*, No. 1:12-CV-126-C, slip op. at 43 (N.D. Tex. Aug. 15, 2014) (internal quotation marks omitted) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987)). The Fifth Circuit Court of Appeals has upheld strip searches following a wide variety of prison circumstances, from prisoner food fights, *see Letcher v. Turner*, 968 F.2d 508 (5th Cir. 1992), to the exchange in a hallway of

---

[1] In his complaint, Plaintiff claimed John Does 1–3 participated in the strip search. (Doc. 1, p. 3). At his *Spears* hearing, however, Plaintiff clarified that John Does 1–3 only participated in the dayroom shakedown.

"potentially provocative barbed words." *See McCreary*, 738 F.3d 651. Indeed, a court in this judicial district has found sufficient cause for a strip search when a jail deputy was tipped off to the presence of contraband. *Wagner v. Thomas*, 608 F.Supp. 1095 (N.D. Tex. May 8, 1985) (finding cause for a strip search upon a tip that a knife was hidden in the jail).

At his *Spears* hearing, Plaintiff testified that prison officials knew the dayroom contained contraband.[2] Plaintiff suggested either prison officials were tipped off or officers simply observed contraband and then initiated the search. Though this might not fit Plaintiff's idea of "provocation" or "exigent circumstances," either case provides sufficient cause for prison officials to initiate a search. *See Wagner*, 608 F.Supp. at 1103. In sum, Plaintiff does not show prison officials violated his violated his constitutional rights by initiating the search.

## B. CONDUCT
### 1. Female Officers And The Strip Search

"The Supreme Court has held that a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continued surveillance of inmates and their cells required to ensure institutional security and internal order." *Poulin*, No. 1:12-CV-126-C, at *43 (internal quotation marks omitted) (quoting *Hudson v. Palmer*, 468 U.S. at 527–28). Still, inmates are not wholly without constitutional rights to privacy. The Fifth Circuit has held that "[a] strip search of a male prisoner by a female guard in the absence of exigent circumstances presents a colorable Fourth Amendment claim." *Hamer v. Jones*, 364 F.App'x 119, 124–25 (5th Cir. 2010) (unpublished) (citing *Moore v. Carwell*, 168 F.3d 234, 235 – 37 (5th Cir. 1999)). And the threshold to survive *sua sponte* dismissal of a cross-sex strip search allegation under 28 U.S.C. § 1915A is "extremely low." *Hamer*, 364 F.App'x at 125.

---

[2] In his complaint, Plaintiff claims officers confiscated property "without justification as there was no contraband found in the dayroom or among the items of property." (Doc. 1, p. 4). However, Plaintiff testified at his *Spears* hearing that contraband was in fact found in the dayroom, at least in the form of photos prison officials classified as "pornographic." Other contraband may have been uncovered during the search unrelated to Plaintiff.

### *a. Parker and Calhoun*

In his complaint and at his *Spears* hearing, Plaintiff alleged that Sergeant Parker, a female officer, ordered Osborne, a male officer, to conduct the strip search of inmates in the passive rec yard. Plaintiff testified that inmates disrobed one at a time before Osborne, who then performed a cavity check[3]; after that inmates would immediately re-clothe. Plaintiff testified that each inmate was unclothed for "no more than five minutes," and only Osborne was actually performing the strip search and cavity check. Other officers were inside a building, although it is not clear whether windows allowed those inside to witness the strip search, as discussed further in section II.B.1.b. below.

The lone exception was shortly after Plaintiff had stripped and been searched—for reasons not made obvious in Plaintiff's complaint or *Spears* hearing—Officer Calhoun, a female officer, ordered Plaintiff to again disrobe. Officer Calhoun then allegedly performed a cavity check on Plaintiff. Although it is not clear, some evidence indicates that Officer Calhoun on her own ordered Plaintiff to undergo the second strip search; some evidence indicates Sergeant Parker ordered Officer Calhoun to conduct the second strip search.

As previously noted, prison officials had adequate cause to perform a shakedown and strip search initially. It is not clear, however, that any cause existed to justify a second, subsequent strip search and cavity check on Plaintiff, particularly by a female officer. There is no indication Osborne was unavailable to perform the strip search and cavity check if in fact cause existed for a second check to be performed.

Accordingly, this court recommends that an answer or other responsive pleading be ordered from Defendants Parker and Calhoun, as Plaintiff has stated sufficient allegations to require such.

---

[3] Plaintiff did not make plain in his complaint or *Spears* hearing whether the cavity checks were visual or digital.

*b. Bennett, Osborne, Leal*

Plaintiff alleges that Bennett, a female officer, was "making an effort to watch" the male inmates as they were strip searched. (Doc. 1, p. 4). Plaintiff does not allege that Bennett participated in the strip search in any other way.

The Fifth Circuit has held no constitutional violation occurred when naked male inmates were viewed by female guards if the presence of female guards was required to protect a legitimate government interest such as maintaining security at a correctional facility. *Barnett v. Collins*, 940 F.2d 1530 (5th Cir. 1991); *Letcher*, 968 F.2d 508; *see also Poulin*, No. 1:12-CV-126-C. That is, the mere presence of female officers during a strip search is not itself a constitutional violation. *Bennett*, 940 F.2d at 1530; *Letcher*, 968 F.2d 508; *Poulin*, No. 1:12-CV-126-C. Without more, Plaintiff has not shown that Bennett violated his constitutional rights by allegedly observing the strip search process.

At his *Spears* hearing, Plaintiff testified that Osborne did "nothing" to violate his constitutional rights. Plaintiff stated Osborne "was just doing his job." Without more, Plaintiff has not shown that Osborne violated Plaintiff's constitutional rights.

Vicarious liability is inapplicable in § 1983 suits, as is the doctrine of respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). However, "[s]upervisory liability might exist under § 1983 without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Brown v. Cain*, 546 F.App'x 471, 475 (5th Cir. 2013) (internal quotation marks omitted).

Plaintiff does not allege Warden Leal implemented a constitutionally deficient policy. Plaintiff claims only an inappropriate application by select individuals on a particular occasion.[4] Without more, Plaintiff has not shown that Warden Leal implemented a policy which itself is a constitutional violation. Because Plaintiff's strip search claims against Bennett, Osborne, and Leal are based on a meritless legal theory, they should be dismissed.

### 2. Property Confiscation Claim

Plaintiff testified at his *Spears* hearing that during the shakedown, his photo album was confiscated because it contained contraband. Plaintiff stated he used his photo album as a sort of briefcase, holding photos of family members, various papers, and photos of "female models." It was the model photos that correctional officers classified as contraband. Days after the confiscation, when Plaintiff filed a grievance requesting his photo album back, the prison offered him a cash settlement deal for the price of a new photo album. Plaintiff declined, saying the dollar amount was too little.

In *Parrat v. Taylor*, the Supreme Court held an inmate negligently deprived of his hobby kit failed to state a cause of action under 42 U.S.C. § 1983 because the inmate had an adequate remedy at state law. 451 U.S. 527, 541–44 (1981). In *Hudson v. Palmer*, the Supreme Court extended *Parrat* to include intentional deprivations of property. 468 U.S. at 533.

As in *Parrat* and *Hudson*, state law affords Plaintiff a remedy for deprivations of property. *See Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983). Accordingly, the *Parratt/Hudson* doctrine prevents Plaintiff from pursuing his confiscation of property claim in federal court. *Parratt*, 451 U.S. at 541–44; *Hudson*, 468 U.S. at 533; *see Thompson*, 709 F.2d at

---

[4] At his *Spears* hearing, Plaintiff vaguely claimed a strip search "might have happened" in 2006 where a female officer saw male inmates nude. Plaintiff provided no further facts on the alleged 2006 incident.

383. Because he fails to state a cause of action under § 1983, Plaintiff's property confiscation claims against all defendants should be dismissed.

### 3. Contaminated Gloves

At his *Spears* hearing, Plaintiff complained that the dayroom shakedown officers did not change their gloves, so contaminants from one inmate's belongings could be transferred to another inmate's belongings. In his complaint, Plaintiff claimed the dayroom officers handled inmates' "underclothes, soaps, etc." (Doc. 1, p. 6).

It is true that unsanitary prison treatment might rise to the level of a constitutional violation. *See, e.g., Green v. Hallam*, 105 F.App'x 858, 863 (7th Cir. 2004). For example, "[a]n unsanitary digital body cavity search could constitute a violation of the Eighth Amendment." *Id.* And courts have denied qualified immunity where defendants failed to change gloves between digital cavity searches where no reasonable officer could have believed that such search was conducted in a constitutionally reasonable manner. *See Nelson v. Dicke*, 2002 WL 511449 (Dist. Minn. 2002); *Bonitz v. Fair*, 804 F.2d 164 (1st Cir. 1986) *rev'd on other grounds, Unwin v. Campbell*, 863 F.2d 124, 132 (1st Cir. 1988). But the requirement that prison guards must change gloves after simply handling inmate clothing is one for which Plaintiff can cite no authority. Plaintiff's conclusory statement that prison officials' gloves "creat[ed] a cross-contamination" is inadequate evidence to sustain his burden to show that the conditions of the search were unsanitary. *See Green*, 105 F.App'x at 863. Plaintiff's contaminated gloves claim is based on a meritless legal theory and is therefore frivolous. *See Harris,* 198 F.3d at 156.

### III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's property confiscation claims and contaminated glove claims against all defendants be **DISMISSED**.

It is further **RECOMMENDED** that Plaintiff's strip search claims, against Defendants Bennett, Osborne, Leal, and John Does 1–3 be **DISMISSED**.

It is finally **RECOMMENDED** that an answer or other responsive pleading be **ORDERED** from Defendants Parker and Calhoun.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 25th day of February, 2015.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**